UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, CENTER FOR CONSTITUTIONAL RIGHTS, and L.B., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY <br><br> *Defendants.* | Civil Action No.: 24-cv-6740 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1.  Plaintiffs the Florence Immigrant and Refugee Rights Project (Florence Project), Center for Constitutional Rights (CCR), and L.B.[1] bring this action under the Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 *et seq.*, to compel the release of agency records improperly withheld by Defendants, U.S. Department of Health and Human Services (HHS), U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement (ICE), and U.S. Department of Homeland Security (DHS), as well as offices and components within Defendant agencies, including but not limited to: the Office of Refugee Resettlement (ORR); the Administration for Children and Families (ACF); the DHS Office of the Inspector General (DHS OIG); the DHS Office of Civil Rights and Civil Liberties (DHS CRCL).

---

[1] Motion to proceed under pseudonym forthcoming.

2. On June 11, 2024, Plaintiffs submitted a FOIA request to Defendants DHS, ICE, and CBP seeking records concerning the use of radiographs to determine the age of unaccompanied children in HHS,[2] ICE, and CBP custody. Also, on June 11, 2024, Plaintiffs submitted a separate FOIA request to HHS seeking records concerning the same. The two FOIA requests focused on (1) records of guidance, policies, and procedures regarding age determinations and redeterminations of unaccompanied children between 2004 and the submission of the FOIA request on June 11, 2024, including all information about requirements related to making a decision about an age determination; (2) data and records of age determination memos, radiographic reports, and age determinations created by HHS, ICE, or CBP, for anyone in HHS, ICE, or CBP custody nationwide between January 1, 2018, and the submission of the FOIA on June 11, 2024; and (3) correspondence and communications between ORR, ICE, and CBP staff and dentists performing the radiographs, and communications to or from HHS, ICE, or CBP staff pertaining to age determinations, including the use of radiographs in age determinations, beginning in 2018.

3. For years, HHS, DHS, CBP, and ICE have continued to violate the Trafficking Victims Protection Reauthorization Act (TVPRA) by exclusively relying on the discredited and racist practice of using radiographs to determine the age of unaccompanied children in their custody, resulting in dangerously misplacing children in adult detention facilities instead of shelters, which are required to meet the best interests of the child and place the child in the least restrictive setting as soon as possible. Despite this, Defendants have so far disclosed zero records in response to Plaintiffs' FOIA requests. The lack of information also raises serious questions

---

[2] The Office of Refugee Resettlement ("ORR") has authority to detain unaccompanied children. ORR is part of the Administration for Children and Families ("ACF"), a subdivision of Defendant HHS.

about the use of widely discredited "science" by federal agencies to make age determinations that disproportionately affect Black and South Asian children and those from majority Black and South Asian countries.

4. To address the urgent need for such critical information, Plaintiffs sought records including communications, policies, and data relating to the use of radiographs for age determinations and redeterminations of unaccompanied children and requested a fee waiver and expedited processing for the request. *See* Ex. 1 and Ex. 2, FOIA Request Letters on behalf of the Florence Immigrant and Refugee Rights Project, the Center for Constitutional Rights ("CCR"), and Plaintiff L.B., (both dated June 10, 2024) ("Plaintiffs' Requests"). The public has a compelling interest in understanding the Defendants' communications and policies on their improper reliance on bone and dental radiographs for age determinations and the misplacement of children in more danger and restrictive adult detention. The public also has a time-sensitive need to obtain accurate information about Defendants' practices in order to meaningfully engage in advocacy and dialogue that informs and protects the public from abuse of these problematic and inherently biased practices, prevent further violations of federal law and policy, educate legal workers and supporters, and advocate with HHS, DHS, ICE and CBP to correctly apply their own policies.

5. Defendants have unjustifiably failed to produce information requested by Plaintiffs. To vindicate the public's statutory right to information about policies and decision-making regarding age determinations, Plaintiffs seek declaratory, injunctive, and other appropriate relief to compel Defendants to immediately process Plaintiffs' Requests and release records that they have unlawfully withheld.

**JURISDICTION AND VENUE**

6. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2).

7. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a), as Plaintiff CCR resides in this district.

**PARTIES**

8. Plaintiff the Florence Project, founded in 1989, is a 501(c)(3) non-profit organization that provides free legal and social services to adults and unaccompanied children facing immigration removal proceedings in Arizona. In 2023, about 7,000 men, women, and unaccompanied children were detained and faced removal in Arizona on any given day. That year, the Florence Project provided "Know Your Rights" presentations to 17,514 unaccompanied children and direct representation to 1,091 children. The Florence Project provided direct representation services to 216 adults in ICE custody and 2,071 adults received educational services through a group "Know Your Rights" presentations and/or individual legal orientation. Its team at the U.S.-Mexico border provided 6,903 people with legal orientations, consultations, and other services. As the only 501(c)(3) non-profit organization in Arizona dedicated to providing free legal services to people in immigration detention, the Florence Project's vision is to ensure that every person facing removal proceedings has access to counsel, understands their rights under the law, and is treated fairly and humanely. The Florence Project also has a robust pro bono representation program that includes referrals to local volunteer attorneys and continuous mentoring. The Florence Project has represented a number of children whose ages were questioned and redetermined by the Office of Refugee Resettlement (ORR) and successfully challenged those decisions before the federal district court. The Florence Project publishes an annual report for

donors, supporters, and the media about the highlights of each year's work. Likewise, the Florence Project publishes information about relevant cases on their website, www.firrp.org, and their social media accounts. The Florence Project uses those to educate and engage with the public about pressing advocacy matters and trends.

9. Plaintiff CCR is a non-profit, public interest legal and advocacy organization headquartered in New York City, New York. CCR engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around immigration, as well as racial and ethnic profiling. One of CCR's primary activities is the publication of newsletters, know-your-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination. These and other materials are available through CCR's Development, Communications, and Advocacy Departments. CCR operates a website, ccrjustice.org, which addresses the issues on which CCR works. CCR staff members often serve as sources for journalists and media outlets, including on issues related to racial justice, racial discrimination, and immigrant rights. In addition, CCR regularly issues press releases, has an active social media presence with tens of thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

10. Plaintiff L.B. is a migrant from Eritrea who now resides in San Francisco, California. California ORR incorrectly determined L.B. to be an adult based on dental x-rays alone, and ICE relied on that faulty age determination to confine him in an adult detention center. Plaintiff L.B. was forced to file a federal habeas action, in which the U.S. District Court for the District of Arizona found that ORR had relied solely on a dental radiograph in making its age determination and ordered ICE to return L.B. to ORR custody.[3]

---

[3] *L.B. v. Keeton et al,* 2:18-cv-03435-JJT—MHB, 2018 WL 11447076, at *7-8 (D. Ariz. Oct. 26, 2018) (ordering ICE to return an unaccompanied child to ORR custody).

11. Defendant HHS is a department of the Executive Branch of the United States. ACF is a component of HHS, and ORR is an office within ACF. ORR provides care and placement for unaccompanied children who enter the United States from other countries without an adult guardian. HHS has possession, custody, and control of the records that Plaintiffs seek.

12. Defendant DHS is a Department of the Executive Branch of the United States tasked with overseeing, inter alia, immigration enforcement, border security, immigration detention, and immigration and citizenship benefits. Its component agencies include ICE, CBP, and United States Citizenship and Immigration Services (USCIS).

13. Defendant ICE is a component of DHS that enforces immigration and customs laws and is responsible for the detention and removal of immigrants.

14. Defendant CBP is a component of DHS responsible for regulating international trade and enforcing U.S. trade, customs, and immigration regulations.

15. HHS, DHS, ICE, and CBP are "agencies" within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

### I. Background – Use of Radiographs for Age Determinations

16. Since at least 1998, U.S. immigration authorities have used forensic testing and dental radiographs as part of the process for determining the age of unaccompanied immigrant children in the U.S. This process has been heavily criticized for many years.[4] It is widely understood that forensic testing of bones and teeth is unreliable because it is impossible to make

---

[4] Brittny Mejia, Kate Morrissey, *U.S. Is Using Unreliable Dental Exams to Hold Teen Migrants in Adult Detention*, LA Times (June 2, 2019), https://www.latimes.com/local/lanow/la-me-ln-immigrant-age-migrants-ice-dental-teeth-bangladesh-20190602-story.html#:~:text=Federal%20law%20prohibits%20the%20government,minors%20released%20from%20adult%20detention.

an exact age determination with these methods. This unreliable testing has a significant impact because between 2014 and 2023 about 6,203 children in ORR custody underwent age determination processes and were deemed to be adults.[5] In fact, federal law prohibits the government from relying exclusively on forensic testing of bones and teeth to determine age because of the high rates of inaccuracy.[6] *See* 8 U.S.C. § 1232(b)(4).[7]

17. In 2007 and 2008, the House Appropriations Committee called on DHS to stop relying on forensic testing of bones and teeth for age determination, stating, "The Committee is also troubled by reports of insensitive and inappropriate treatment of unaccompanied [immigrant] children and directs the Department to cease its use of and reliance on unreliable forensic testing of children's bones and teeth to determine their age. Instead, the Committee strongly encourages the Department to use holistic age-determination methodologies recommended by medical and child welfare experts."[8]

18. In 2008, Congress enacted the TVPRA. The TVPRA creates a specific set of rights and protections for unaccompanied immigrant children in the custody of the federal government. *See generally* 8 U.S.C. § 1232. Unaccompanied immigrant children, defined as persons under 18 years of age without legal status and without a parent or guardian able to provide care, are provided with specific protections under federal law in recognition of this group's particular vulnerability.

---

[5] Melissa Alcaraz et al., *Unaccompanied Migrant Children in US Government Custody: 2014–2023*, International Migration Review (2024), https://doi.org/10.1177/01979183241252034
[6] *Id.*
[7] *See also* Office of Refugee Resettlement, Unaccompanied Children Bureau Pol'y Guide, Section 1.6.2 Instructions for Age Determinations (Aug. 1, 2024) (recognizing that no medical assessment can provide an exact age but merely provide an "estimated probability that an individual is 18 or older).
[8] H.R. Rep. 110-181, at 43 (2008)

6 U.S.C. § 279(g)(2). Among those protections are the right to be held in separate accommodations from adults and to be placed in the least restrictive setting that is in the best interest of the child.

19. The TVPRA "requires better care and custody of unaccompanied [noncitizen] children to be provided by the Department of Health and Human Services (HHS)."[9] In furtherance of that goal, it requires "the care and custody of all unaccompanied [noncitizen] children . . . shall be the responsibility of the Secretary of Health and Human Services"—not Immigration and Customs Enforcement.[10] Once a sponsor is identified and vetted, children in HHS custody have the right to be placed in the least restrictive setting that is in the best interest of the child. 8 U.S.C. § 1232(c)(2)(A).

20. The TVPRA also sets specific parameters around how to determine the age of children in the custody of the federal government—a crucial decision that establishes who is covered by the statute's protection and who is not. 8 U.S.C. Section 1232(b)(4) states that "[a]t a minimum, [age determination] procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied [noncitizen]."

**Ongoing Misuse of Radiographs by ORR, ICE, and CBP**

21. Since approximately 2018, Plaintiff Florence Project has represented and advocated for at least 50 children sent to adult ICE detention *solely* based on dental or bone radiographs.[11]

22. For example, Florence Project client L.B. was wrongly determined to be an adult based purely on an x-ray of his teeth.

---

[9] H.R. Rep. 110-430, at 57 (2007).
[10] *Id.*
[11] *See, e.g., L.B.*, 2018 WL 11447076, at *7-8 (ordering ICE to return an unaccompanied child to ORR custody).

23. Beginning in 2018, this practice of ORR using dental radiographs on immigrant children began to gain national news coverage and public outcry.[12]

24. Both the Trump and Biden administrations have been aware of civil rights violations related to age determinations, including the significant misuse of radiographs. Between 2015 and 2020, the DHS CRCL "received over 100 allegations that U.S. Customs and Border Protection (CBP) violated the civil rights and civil liberties of unaccompanied immigrant children (UIC) when determining their ages or verifying the authenticity of their birth certificates."[13] In 2020, DHS CRCL investigated numerous complaints made against ICE and CBP for improper age determinations of children in their custody.[14] DHS CRCL investigations highlighted allegations of CBP officers "discarding and destroying birth certificates, pressuring and coercing [unaccompanied children] UIC into incorrectly claiming they are adults, and falsifying records of UIC's ages."[15] The DHS report also noted, "In July 2021, CRCL sent ICE a Recommendation Memorandum with six recommendations [related to concerns regarding age determinations]. In February 2022, ICE responded, partially concurring with four recommendations and non-concurring with two. ICE agreed to provide training about its age determination procedures to

---

[12] *See* Aura Bogado, *Here's how ICE sent children seeking asylum to adult detention centers*, Reveal (May 3, 2018), https://revealnews.org/blog/heres-how-ice-sent-children-seeking-asylum-to-adult-detention-centers/; Mimi Dwyer et al., *The U.S. is checking immigrant kids' teeth to see if they actually belong in adult detention*, VICE (October 11, 2018), https://www.vice.com/en/2018/10/11/the-us-is-checking-immigrant-kids-teeth-to-see-if-they-actually-belong-in-adult-detention/.

[13] Memorandum from Cameron P. Quinn, Officer, Office for Civil Rights and Civil Liberties, to Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Patrol, et. al. 1 (May 11, 2020), *available at* https://www.dhs.gov/sites/default/files/publications/retention-memo-cbp-age-determination-birth-certificate-verification-05-11-20.pdf/ (hereinafter "Quinn Memo").

[14] U.S. Dep't of Homeland Sec., Office for Civil Rights and Civil Liberties, Fiscal Year 2022 Annual Report to Congress 58 (Nov. 17, 2023), *available at* https://www.dhs.gov/sites/default/files/2023-12/23_1117_crcl_fy22-annual-report-508.pdf (hereinafter "CRCL FY '22 Report").

[15] Quinn Memo at 1.

relevant ICE personnel and to update its age determination policies and procedures with a clarification about verifying age claims and a reminder about using medical assessments as a last resort."[16]

25. One of the dentists contracted by ORR since 1998, who handled over 2,000 cases as of 2019, has admitted that making an exact age determination using radiographs and forensic review is not possible.[17]

26. Despite persistent and increasing concerns from the public, the press, and legal advocates, little to no information has been publicly released regarding the abuses suffered by unaccompanied children in ORR, ICE, and CBP custody– information that is critical to holding the federal government accountable and preventing future harm.

**Racial Disparities in Use of Radiographs**

27. Furthermore, the Florence Project has observed that ICE receives a disproportionate amount of age determination notifications from ORR involving individuals from African and South Asian nations.

28. Nearly *all* of the 50 children that the Florence Project has advocated for after age determinations based solely on radiographs have been from Africa and South Asia. Children from those areas represent only a very small fraction of the children the Florence Project works with, though they represent the vast majority of the age determination cases.

29. The dental analysis that the government has relied on to make age determination decisions is based on unethical race science. For example, one dentist's assessment of race is based

---

[16] CRCL FY '22 Report at 58.
[17] Claire Corkish et al., *It's Unethical to Use Dental X-Rays to Send Immigrant Children to Adult Detention Facilities*, Boston Univ. Sch. of Pub. Health (July 3, 2019) https://www.bu.edu/sph/news/articles/2019/its-unethical-to-use-dental-x-rays-to-send-immigrant-children-to-adult-detention-facilities/

on provided biographical information, like name and country of origin. A computer program then compares the subject's dental image to just four studies relating dental development to ethnicity, and those studies include disclaimers about the limitations of the method. Anyone deemed "Asian" is assigned a study of Japanese juveniles. Anyone deemed "American Hispanic" gets a study of North and South Texans of Hispanic descent, sometimes determined by their last name. Anyone "European" gets a study of American and Canadian "whites." And anyone "African" gets a study of Black Americans from an Arkansas penal facility and two practices in Tennessee.[18]

**II. Compelling Necessity for Records Sought**

30. There is a desperate need for transparency in Defendants' processes for determining and redetermining the age of unaccompanied children. The harm caused by misplacement of unaccompanied children in adult detention due to the exclusive use of radiographs cannot be understated: whereas children in ORR custody have the right to receive educational services, receive counseling, and be placed in the least restrictive setting in their best interest, ICE houses adults in prison-like facilities where they receive none of those benefits and have no right to a prompt release. *Compare* 45 C.F.R. §§ 410.1200, 410.1302, *with* ICE Detention Standards, https://www.ice.gov/factsheets/ice-detention-standards. There is a clear connection between Defendants' misuse of radiographs and the disproportionate misplacement of Black and South Asian children in adult detention.

31. Since 2020, Defendants have been investigated on multiple occasions for their failure to adhere to age determination policies, specifically for their exclusive reliance on radiographs.

---

[18] Mimi Dwyer et al., *The U.S. is checking immigrant kids' teeth to see if they actually belong in adult detention*, VICE (Oct. 11, 2018), https://www.vice.com/en/2018/10/11/the-us-is-checking-immigrant-kids-teeth-to-see-if-they-actually-belong-in-adult-detention/

32. In addition, immigrant rights advocates, including Plaintiffs, assert that Black and South Asian unaccompanied children are subject to racial discrimination throughout the age determination and redetermination processes. Plaintiffs have observed that ICE receives a disproportionate amount of age determination referrals from ORR involving individuals from African and South Asian nations. Government agencies should not and cannot engage in discriminatory behavior in violation of the U.S. Constitution and other laws prohibiting discrimination. The public has a compelling interest in obtaining documentation of Defendants' policies and procedures that result in the disproportionate number of referrals for Black and South Asian children for age determination processes.

33. There is an urgent need to inform the public of the policies and decision-making regarding age determinations because this process continues to be abused and misunderstood by Defendants. For example, the Florence Project represented a young man in 2022 who spent 40 days segregated from other unaccompanied children and then detained in adult detention. More recently, the Florence Project has seen more children placed in ORR shelters from West African countries like Mauritania, Guinea, and Cameroon. Given that Plaintiffs have seen both ORR and ICE rely exclusively on dental radiographs in the past to determine the age of African children in its custody, the information sought is crucial to help Florence Project and other legal advocates prevent further violations of federal law and policy, educate our staff and supporters, and advocate with ORR and ICE to correctly apply their own policies.

34. Members of the public also have a compelling interest in understanding the circumstances of children, especially Black and South Asian children, being confined in adult detention facilities. The public also has a compelling interest in accessing information regarding instances children being inaccurately confined in adult detention, especially where it may be racially motivated or have a discriminatory impact. Plaintiffs have a longstanding history and

documented capability of disseminating information about government activity, including information gathered through FOIA requests, to educate the public and help inform political debate.

35. Accordingly, Plaintiffs' FOIA requests and the present action are necessary in order to vindicate the public's statutory right to be informed about Defendants' age determination and redetermination processes and their impact on Black and South Asian unaccompanied children.

### III. Plaintiffs' Requests for Information

#### A. HHS and ORR

36. On June 11, 2024, Plaintiffs sent a FOIA request via email and Federal Express for records regarding ORR's age determinations processes for unaccompanied children to HHS and ACF.

37. On June 12, 2024, "P. Allen" at HHS received Plaintiff's FOIA request via Federal Express, tracking number 776809632060.

38. On June 12, 2024, "P. Allen" at ACF received Plaintiff's FOIA request via Federal Express, tracking number 776809857758.

39. As of August 28, 2024, Plaintiffs have received no response from HHS, ACF or ORR to their request.

#### B. DHS, ICE and CBP

40. On June 11, 2024, Plaintiffs sent a FOIA request via email and Federal Express for records regarding DHS, ICE and CBP's age determinations processes for unaccompanied children to DHS, ICE, CBP, DHS CRCL and DHS OIG.

41. On June 12, 2024, "R.ON GILL" at DHS received Plaintiff's FOIA request via Federal Express, tracking number 776809770020.

42. On June 12, 2024, "R.ON GILL" at DHS CRCL received Plaintiff's FOIA request via Federal Express, tracking number 776810173211.

43. On June 12, 2024, "R.ON GILL" at DHS OIG received Plaintiff's FOIA request via Federal Express, tracking number 776810485430.

44. On June 12, 2024, "R.ON GILL" at ICE received Plaintiff's FOIA request via Federal Express, tracking number 776810055161.

45. On June 12, 2024, "R.ON GILL" at CBP received Plaintiff's FOIA request via Federal Express, tracking number 776809199262.

46. As of September 4, 2024, Plaintiffs have received no response from DHS, DHS CRCL, DHS OIG, ICE, or CBP to their request.

47. All of Plaintiffs' Requests sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I), citing a "compelling need" for the information because of the urgent need to inform the public of the policies and decision-making regarding age determination procedures for unaccompanied children, including the exclusive use of dental and bone radiographs. Defendants have not responded to Plaintiffs' requests for expedited processing.

48. All Plaintiffs' Requests also sought a waiver of applicable fees under 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(b); 45 C.F.R. § 5.54(b)(2), because "disclosure of the requested records is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester." The Florence Project and CCR are non-profit entities with no commercial interest in the records requested, which are crucial to public understanding of Defendants' operations. Defendants have not responded to Plaintiffs' requests for fee waivers.

**CLAIMS FOR RELIEF**

**First Claim for Relief:**

**Violation of FOIA for Failure to Disclose and Release Responsive Records**

49. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 48 as if repeated and incorporated herein.

50. By failing to make a determination on Plaintiffs' FOIA requests within the mandated statutory timeframe, by failing to disclose and release the requested records, and by failing to conduct an adequate search reasonably calculated to uncover responsive records, Defendants have violated the public's right, advanced by the Plaintiffs, to agency records under 5 U.S.C. §§ 552 *et seq*.

**Second Claim for Relief:**

**Violation of FOIA for Improper Denial of Plaintiffs' Request for Expedited Processing**

51. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 48 as if repeated and incorporated herein.

52. By denying or failing to respond timely to Plaintiffs' requests for expedited processing, Defendants have violated Plaintiffs' rights under 5 U.S.C. § 552(a)(6)(E) and Defendants' own regulations.

**Third Claim for Relief**:

**Violation of FOIA for Improper Denial of Plaintiffs' Request for Fee Waiver**

53. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 48 as if repeated and incorporated herein.

54. By failing to respond or failing to non-conditionally grant Plaintiffs' requests for fee waivers, Defendants have denied Plaintiffs' rights under 5 U.S.C. § 552(a)(4)(A)(iii) and Defendants' own regulations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Order Defendants immediately to make a full, adequate, and expedited search for the requested records;

(b) Order Defendants to engage in expedited processing in this action;

(c) Enjoin Defendants HHS, DHS, ICE, and CBP from assessing fees or costs for the processing of the FOIA Request;

(d) Order Defendants to disclose the requested records in their entirety and make copies available to Plaintiffs no later than ten days after the Court's order;

(e) Award Plaintiffs their costs and reasonable attorney's fees incurred in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

(f) Grant each other and further relief as this Court may deem just and proper.

Dated: September 5, 2024
New York, NY

/s/ Samah Sisay
Samah Sisay
Jeremy Burton*
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6484
ssisay@ccrjustice.org
rburton@ccrjustice.org

C.J. Sandley, GA Bar No. 610130*
Center for Constitutional Rights
P.O. Box 486
Birmingham, AL 35201
(212) 614-6443
csandley@ccrjustice.org

Laura Belous, AZ Bar No. 028132*
Rocío Castañeda Acosta, AZ Bar No. 031173*
Florence Immigrant & Refugee Rights Project
P.O. Box 86299
Tucson, AZ 85754
(520) 269-7153
lbelous@firrp.org
rcastaneda@firrp.org

16

*\* Pro hac vice petitions forthcoming*

*Counsel for Plaintiffs*