# EXHIBIT 1



June 10, 2024

U.S. Customs and Border Protection
FOIA Division
90 K Street, NE
Washington, DC 20229

U.S. Department of Homeland Security
Chief Privacy Officer/Chief FOIA Officer The Privacy Office
245 Murray Lane SW, Stop0655
Washington, D.C. 20528-0655

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
Compliance Branch
2707 Martin Luther King, Jr. Avenue, SE, Stop 0190
Washington, DC 20528-0190

Office of the Inspector General
U.S. Department of Homeland Security
245 Murray Lane SW, Stop 0305
Washington, D.C. 20528-0305

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009

*Sent via Federal Express*

**Re: Freedom of Information Act Request**

To Whom it May Concern:

     The Florence Immigration & Refugee Rights Project ("Florence Project"), the Center for Constitutional Rights ("CCR"), and a former client (L.B.)[1] of Florence Project who have previously been detained by ICE, (collectively, "Requesters") submit this request pursuant to the Freedom of Information Act, 5 U.S.C § 552, for public records in the custody of the U.S. Department of Homeland Security ("DHS") and its component agencies, U.S. Customs and Border Protection ("CBP") and U.S. Immigration and Customs Enforcement ("ICE"), as well as DHS's Office of the Inspector General ("DHS OIG") and DHS's Office for Civil Rights and

---

[1] This is not a Privacy Act request in regards to requester L.B.

1

Civil Liberties ("CRCL"), for information on DHS's age determination policies and the use of dental and bone radiographs to determine the age of people in DHS, ICE, and CBP custody.[2] We ask that you please direct this request to all appropriate offices and departments within each agency, including but not limited to: the Office of Immigration Detention Ombudsman ("OIDO"), Enforcement Removal Operations ("ERO"), ICE Health Service Corps ("IHSC") and the IHSC Managed Care Branch, DHS/ICE/CBP Offices of Public Relations ("OPR"), Homeland Security Investigations ("HSI"), Juvenile and Family Residential Management Unit ("JFRMU"), ICE Detention and Removal Office ("DRO") Field Office Juvenile Coordinator ("FOJC"); and also all Phoenix field offices (ERO, OPR, OPLA, OPE and any others, including sub-stations in Eloy and Florence, AZ), the Tucson field office of CBP, and other applicable DHS-related field offices in the state of Arizona.

**Purpose of Request**

This request regards records and data that were prepared, received, transmitted, collected, and/or maintained by DHS, CBP, and ICE concerning the use of dental and bone radiographs for the determination of ages of people in DHS, CBP, or ICE custody, and how the agencies may be using such radiographs in a racially discriminatory way.

The Trafficking Victims Protection Reauthorization Act (TVPRA) creates a specific set of rights and protections for unaccompanied immigrant children in the custody of the federal government. *See generally* 8 U.S.C. § 1232. Among those are the right to be held in separate accommodations from adults and to be placed in the least restrictive setting that is in the best interest of the child. *Id.* Moreover, DHS regulations, which apply to ICE and CBP facilities, require sight, sound, and physical separation of detained people under age 18 from detained adults. *See* 8 C.F.R. §§ 115.14(b), 115.114(b). Therefore, the determination of whether a youth is an adult or a child protected under these statutes is critical. To determine age, 8 U.S.C. § 1232(b)(4) provides that: "The Secretary of Health and Human Services, in consultation with the Secretary of Homeland Security, shall develop procedures to make a prompt determination of the age of an alien, which shall be used by the Secretary of Homeland Security and the Secretary of Health and Human Services for children in their respective custody. At a minimum, these procedures shall take into account multiple forms of evidence, including the non-exclusive use of radiographs, to determine the age of the unaccompanied alien."

Section 1.6 of the Office of Refugee Resettlement ("ORR") Unaccompanied Children Program Policy Guide sets forth detailed policies and procedures related to age determinations of children in ORR custody and states in its introduction: "To carry out the TVPRA provision [regarding age determination procedures], HHS and **DHS** worked jointly to develop the age

---

[2] A similar request has been sent to the Office of Refugee Resettlement ("ORR") within the Department of Health and Human Services.

determination policies and procedures in this section."[3] (emphasis added) Section 1.6.2 of the ORR Policy Guide states: "Dental maturity assessments using radiographs may be used to determine age, but only in conjunction with other evidence."[4]

Despite this clear guidance, the Florence Project has witnessed and continues to currently represent and advocate for at least 50 children sent to adult ICE detention *solely* based on dental or bone radiographs.[5] Furthermore, the Florence Project has observed that ICE receives a disproportionate amount of age determination referrals from ORR involving individuals from African and South Asian nations. L.B. is are one such individual from Eritrea who had such faulty determinations made while in custody.[6]

Requesters are deeply concerned about exclusive reliance on radiographs to determine and/or redetermine the age of children in DHS and ORR custody. In recent years, the DHS Inspector General, medical professionals, and Dr. David Senn, the dentist who developed this technology, have all criticized these exams as being "unreliable" because the exams were never designed to pinpoint a person's exact age.[7]

Both the Florence Project and the Center for Constitutional Rights (CCR) are also concerned about improper age determinations of children, especially Black migrants, in ICE and CBP custody. In its 2022 Annual Report, the DHS Office of Civil Rights and Civil Liberties reported that it had "investigated several complaints alleging that ICE improperly determined the ages of individuals in detention facilities who purported to be minor" and that it had identified "concerns with ICE's age determination procedures."[8] In response to a Recommendation Memo sent by CRCL to ICE in July 2021, ICE had "agreed to provide training about its age determination procedures to relevant ICE personnel and to update its age determination policies and procedures with a clarification about verifying age claims and a reminder about using medical assessments as a last resort."[9] CRCL has investigated similar complaints with respect to age determinations of children in CBP custody. In a May 11, 2020, memorandum notifying CBP that CRCL had opened an investigation to determine "whether CBP has complied with

---

[3] ORR Unaccompanied Children Program Policy Guide, Section 1.6, https://www.acf.hhs.gov/orr/policy-guidance/unaccompanied-children-program-policy-guide-section-1.
[4] *Id*. at § 1.6.2.
[5] *See, e.g.*, *L.B. v. Keeton et al,* 2:18-cv-03435-JJT—MHB (D. Ariz. 2018),ECF No. 12 (ordering ICE to return an unaccompanied child to ORR custody).
[6] *Id.*
[7] *Age Determination Practices for Unaccompanied Children in ICE Custody,* U.S. Department of Homeland Security Office of Inspector General (Nov. 10, 2009) at 1; Corkish & Diaz, *It's Unethical to Use Dental X-Rays to Send Immigrant Children to Adult Detention Facilities,* BU School of Public Health, (Jul 3, 2019);Brittny Mejia, Kate Morrissey, *U.S. Is Using Unreliable Dental Exams to Hold Teen Migrants in Adult Detention,* LA Times (Jun. 2, 2019).
[8] U.S. Dep't of Homeland Sec.,Office for Civil Rights and Civil Liberties, Fiscal Year 2022 Annual Report to Congress 58 (Nov. 17, 2023), *available at* https://www.dhs.gov/sites/default/files/2023-12/23_1117_crcl_fy22-annual-report-508.pdf.
[9] *Id*. at 58.

applicable policies and procedures related to the age determination" of unaccompanied children in CBP custody, CRCL stated: "Over the last five years, the U.S. Department of Homeland Security, Office for Civil Rights and Civil Liberties (CRCL) has received over 100 allegations that U.S. Customs and Border Protection (CBP) violated the civil rights and civil liberties of unaccompanied children (UAC) when determining their ages or verifying the authenticity of their birth certificates. These allegations arise from reported incidents at both U.S. Border Patrol (USBP) stations and Office of Field Operations (OFO) ports of entry. These include similar allegations, such as CBP discarding and destroying birth certificates, pressuring and coercing UAC into incorrectly claiming they are adults, and falsifying records of UAC's ages."[10]

Additionally, this FOIA request furthers the efforts of both CCR and Florence Project to investigate, educate the public about, and advocate against anti-Black racism within federal immigration enforcement agencies, and to challenge the mass detention of migrants, generally, and expose inhumane conditions within immigration detention.

We seek this information in order to better advocate for our clients and to advance the civil rights and safety of all children in federal immigration detention.

A. **Definitions**

- **Age decision**: A finalized decision in any form, including an email, transfer document or request, case note, Significant Incident Report (SIR), I-213, Record of Investigation, or medical report that determines a person's age. This also includes any age decision documentation, including memos, created by ORR that is in DHS possession.
- **"Age determination" and "age redetermination."** We use these terms interchangeably to define any material that pertains to the policies and practices of determining the age of individuals in DHS, ICE, CBP or ORR custody and particularly whether individuals in custody are over 18 years of age.
- **Age determination memo or age redetermination memo.** An individual memo prepared by an agency related to an age decision about one specific person. A sample from 2018 is attached as Attachment A, produced by ORR previously through a separate FOIA request.
- **Communication(s).** In this request the term "communication" means the transmittal of information (in the forms of facts, ideas, inquiries or otherwise).

---

[10] Memorandum from Cameron P. Quinn, Officer, Office for Civil Rights and Civil Liberties, to Mark A. Morgan, Acting Commissioner, U.S. Customs and Border Patrol, et. al. (May 11, 2020), *available at* https://www.dhs.gov/sites/default/files/publications/retention-memo-cbp-age-determination-birth-certificateverification-05-11-20.pdf.

- **Medical age assessment report**. A report from a medical professional purporting to provide scientific information about an individual's age. A sample from 2018 is attached as Attachment B.
- **Record(s).** In this request the term "record(s)" includes, but is not limited to, all Records or communications preserved in electronic (including metadata) or written form, such as correspondences, emails, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, legal opinions, protocols, reports, rules, talking points, technical manuals, technical specifications, training manuals, studies, or any other Record of any kind.

**B. Request for Information**

Requesters seek the following records, beginning January 1, 2018, through the time of this FOIA request, unless otherwise specified:

*Policies and Guidance*

1. All guidance, policies, and procedures regarding age determinations and redeterminations in use since 2004, including but not limited to the following topics:
    a) Determining whether reasonable suspicion exists to initiate an age determination;
    b) When and how to request radiographs to determine age;
    c) Funding instructions or guidance related to DHS, CBP and/or ICE's use of external contractors, including dentists, for radiographs used to determine age;
    d) How to author an age determination memo;
    e) When not to initiate age determinations;
    f) Instructions, procedures and/or training documents related to requirements and steps agency employees must take before, during and after an age determination or redetermination is made.
    g) Interagency coordination between DHS, CBP and/or ICE with ORR with respect to age determinations; and
    h) How ICE selects a dental or medical provider to conduct and evaluate radiographs or any other dental or medical testing related to age determinations.

2. All information about requirements related to making a decision about age determination, and any age decisions made by ICE <u>that were not documented in an age determination memo</u>, including transfer documentation, e-mails, and other forms related to age. All age decision documentation, including memos, created by ORR that is in DHS possession.

3. All directives, policies, protocols, and/or guidance pertaining to adjudication of age determinations currently in use by ICE.

*Agency Breakdowns*

1. Copies of all age determination memos created by ICE or CBP for anyone in ICE or CBP custody nationwide from January 1, 2018, to present, including information sufficient to indicate which memos and reports are generated for each ICE or CBP regional or field office.

2. Copies of all age radiographic reports created by ICE or CBP for anyone in ICE or CBP custody nationwide from January 1, 2018, to present, including information sufficient to indicate which memos and reports are generated for each ICE or CBP regional or field office.

3. Copies of all age decisions created by ICE or CBP for anyone in ICE or CBP custody nationwide from January 1, 2018, to present, including information sufficient to indicate which memos and reports are generated for each ICE or CBP regional or field office.

4. All records reflecting the total financial expenditure(s) by DHS, ICE, and CBP to use radiographs to conduct age determinations:
   a) Broken down by agency, component, or subcomponent.
   b) Broken down by year, from January 1, 2018, to present.
   c) Broken down by state where the subject was located when the radiograph was completed.

*Communications*

5. Any and all communications between DHS, ICE, or CBP staff and one or both dentists, including medical age reports:
   - Dr. David Senn[11]
   - Dr. Peter Arvanitis[12]

---

[11] Dr. Senn's involvement with ORR and age determinations has been public information for many years. For example, *see* Brittny Mejia, *U.S. is using unreliable dental exams to hold teen migrants in adult detention*, Los Angeles Times (June 2, 2019), https://www.latimes.com/local/lanow/la-me-ln-immigrant-age-migrants-ice-dental-teeth-bangladesh-20190602-story.html. *See also* Aura Bogado, *Here's how ICE sent children seeking asylum to adult detention centers*, Reveal (May 3, 2018), https://revealnews.org/blog/heres-how-ice-sent-children-seeking-asylum-to-adult-detention-centers/.

[12] Dr. Arvanitis's involvement with ORR is public information. *See, e.g.*, Attachment B, Medical Dental Report.

6. All communications to or from DHS, ICE, or CBP staff pertaining to age determinations or age decisions, including the use of radiographs in age determinations, from 2018 to the through the time of response to this request.
    - Suggested search terms to be used alone or in combinations:[13]
        i. "age determination," "8 U.S.C. § 1232," "radiograph," "dental," tooth," "teeth," "bone," "odontological, "x-ray, " "Arvantis," "Senn" "adult" "Treatment Authorization Request" "TAR" "dentist" and "transfer"

C. **Format of Request**

Please search for responsive records regardless of format, medium, or physical characteristics, and including electronic records. If terms or codes are not in the form template and/or publicly defined, please provide a glossary or other descriptive records containing definitions of acronyms, numerical codes, or terms contained in data responsive to this request. Please provide the requested documents in the following format:

- Provided via email or via secure FTP site
- In PDF format wherever possible;
- Electronically searchable wherever possible;
- Each paper record in a separately saved file;
- "Parent-child" relationships maintained, meaning that the Requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields; and
- With any other metadata preserved.

D. **Requesters**

Requester **L.B.**, who was 17 at the time of his detention, grew up in the turmoil of Eritrea's civil war and lacked identity documents when he arrived in the U.S. as an unaccompanied minor. ORR speculated that he behaved "like an early 20s person" and relied on a dental radiograph to send him to adult detention. In rejecting that determination, a U.S. District Court held that "there is no apparent plausible construction of the TVPRA, or the ORR Guide, under which an ORR official's nonspecific, unsubstantiated speculation of what they perceive to be adult behavior suffices as "evidence" that may be considered and relied upon in making an age determination" and rejected the age determination because, absent speculation, it relied only

---

[13] Requesters recognize that, under FOIA, agencies are not obligated to use search terms suggested by the requester; however DHS FOIA regulations specifically ask that "requesters should include specific information that may assist a component in identifying the requested records." 6 C.F.R. § 5.3(b). As such, search terms would obviously fall within the scope of "specific information."

on a dental radiograph. *L.B. v. Keeton*, No. CV1803435PHXJJTMHB, 2018 WL 11447076, at *6 (D. Ariz. Oct. 26, 2018)

Founded in 1989, the **Florence Project** is a 501(c)(3) non-profit organization that provides free legal and social services to adults and unaccompanied children facing immigration removal proceedings in Arizona. In 2022, about 7,000 men, women, and unaccompanied children were detained and faced removal in Arizona at any given day. That year, we provided "Know Your Rights" presentations to 14,622 unaccompanied children and direct representation to 668 children. We provided direct representation services to about 220 adults in ICE custody and our team at the U.S.-Mexico border provided 13,731 people with legal orientations and consultations, and other services. As the only 501(c)(3) non-profit organization in Arizona dedicated to providing free legal services to people in immigration detention, our vision is to ensure that every person facing removal proceedings has access to counsel, understands their rights under the law, and is treated fairly and humanely. The Florence Project also has a robust pro bono representation program that includes referrals to local volunteer attorneys and continuous mentoring. We have represented a number of children whose ages were questioned and redetermined by the Office of Refugee Resettlement (ORR) and successfully challenged those decisions before the federal district court.[14] The Florence Project publishes an annual report for donors, supporters, and the media about the highlights of each year's work. Likewise, we publish information about relevant cases on our website, www.firrp.org, and our social media accounts. We use those to educate and engage with the public about pressing advocacy matters and trends.

The **Center for Constitutional Rights ("CCR")** is a non-profit, public interest legal and advocacy organization that engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around immigration, as well as racial and ethnic profiling. One of CCR's primary activities is the publication of newsletters, know-your-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination. These and other materials are available through CCR's Development, Communications, and Advocacy Departments. CCR operates a website, http://ccrjustice.org, which addresses the issues on which the Center works. CCR staff members often serve as sources for journalists and media outlets, including on issues related to racial justice, racial discrimination, and immigrant rights. In addition, CCR regularly issues press releases, has an active social media presence with thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

E.  **Request for Fee Waiver**

---

[14] *See, e.g. L.B. v. Keeton*, No. CV-1803435-PHX-JJT-MHB, 2018 WL 11447076, at *6 (D. Ariz. Oct. 26, 2018) (finding that ORR relied on "nonspecific, unsubstantiated speculation" to justify an age determination); *see also I.J. v. Keeton*, No. CV-1901904-PHX-SMB-JZB, 2019 WL 13196148, at *7 (D. Ariz. Apr. 17, 2019) (holding that ORR failed to "document the evidence considered and conclusions reached in the age determination").

Requesters seek a fee waiver because the information sought in the request is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the [requesters]..." 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k). Requesters meet the requirements for a fee waiver because the subject of the request concerns the operations or activities of the government, the disclosure of the information is likely to contribute to a significant public understanding of government operations or activities, the Requesters' primary interest is in disclosure, and they have no commercial interest in the information. *See* 6 C.F.R. § 5.11(b).

As described above, the Requesters are non-profit organizations dedicated to educating the public and advocating for civil rights, human rights, and immigrant rights, and have undertaken this work in the public interest and not for any private commercial interest. Similarly, the primary purpose of this FOIA request is to obtain information to further the public's understanding of federal immigration actions and policies, and their effects on immigrant communities, particularly children and young people. Access to this information is crucial for Requesters, and the communities they serve, to evaluate government procedures and actions, as well as their potential detrimental effects.

Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost. Disclosure in this case, therefore, meets the statutory criteria, and a fee waiver would fulfill Congress' legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309,1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial requesters.'")(citing *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987)).

In the alternative, if no fee waiver is granted and the fees exceed $250.00, please contact the Requesters to obtain consent to incur additional fees. Processing fees should be limited pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media.").

### F.  Expedited Processing

Expedited processing of this request is required because there is a "compelling need" for the information. *See* 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" may exist where there is an "urgency to inform the public concerning actual or alleged Federal Government activity," and the requesting party is "primarily engaged in disseminating information." 6 C.F.R. § 5.5(e)(ii).

There is an urgent need to inform the public of the policies and decision-making regarding age determinations because this process continues to be abused and misunderstood by ICE. For example, the Florence Project represented another young man in 2022 who spent 40 days segregated from other UCs and then detained in adult detention. When we advocated for the client to be released, ICE officers did not understand that they could not rely exclusively on a dental radiograph to determine age. Further, ICE stated in 2021 that it would update training materials. Release of those materials is essential so that we can train staff and advocate for clients if the agency fails to comport with law and policy. More recently, we have seen more children placed in ORR shelters from West African countries like Mauritania, Guinea, and Cameroon. Our staff recently informed us that they have seen an increase in ORR's use of dental radiographs for age determination in the last few weeks. Given that we have seen both ORR and ICE rely exclusively on dental radiographs in the past to determine the age of African children in its custody, this information is crucial to help us prevent further violations of federal law and policy, educate our staff and supporters, and advocate with ICE to correctly apply its own policies.

### G. Conclusion

The Requesters certify that the above information is true and correct to the best of the Requesters' knowledge. If this Request is denied in whole or in part, Requesters ask that CBP, DHS, and ICE justify all deletions by reference to specific exemptions of FOIA. The Requesters expect CBP, DHS, and ICE to release all segregable portions of otherwise exempt material. Additionally, Requesters reserve the right to appeal a decision to withhold any records or a decision to deny this application for expedited processing and fee waiver.

Respectfully submitted,

*Laura Belous*
_____

Laura Belous, Esq.
Florence Immigrant & Refugee Rights Project

June 13, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 776810055161

### Delivery Information:

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Shipping/Receiving |
| **Signed for by:** | R.ON GILL | **Delivery Location:** | |
| **Service type:** | FedEx Priority Overnight | | |
| **Special Handling:** | Deliver Weekday; Direct Signature Required | | WASHINGTON, DC, |
| | | **Delivery date:** | Jun 12, 2024 09:42 |

### Shipping Information:

| | | | |
|---|---|---|---|
| **Tracking number:** | 776810055161 | **Ship Date:** | Jun 11, 2024 |
| | | **Weight:** | 0.5 LB/0.23 KG |

**Recipient:**  
WASHINGTON, DC, US,

**Shipper:**  
TUCSON, AZ, US,

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment. Please check again later for a signature.

Thank you for choosing FedEx

June 14, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 776809770020

| Delivery Information: | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Shipping/Receiving |
| **Signed for by:** | R.ON GILL | **Delivery Location:** | |
| **Service type:** | FedEx Priority Overnight | | |
| **Special Handling:** | Deliver Weekday; Direct Signature Required | | WASHINGTON, DC, |
| | | **Delivery date:** | Jun 12, 2024 09:42 |

| Shipping Information: | | | |
|---|---|---|---|
| **Tracking number:** | 776809770020 | **Ship Date:** | Jun 11, 2024 |
| | | **Weight:** | 1.0 LB/0.45 KG |

| **Recipient:** | **Shipper:** |
|---|---|
| WASHINGTON, DC, US, | TUCSON, AZ, US, |

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx

June 14, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 776809199262

| Delivery Information: | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Shipping/Receiving |
| **Signed for by:** | R.ON GILL | **Delivery Location:** | |
| **Service type:** | FedEx Priority Overnight | | |
| **Special Handling:** | Deliver Weekday; Direct Signature Required | | WASHINGTON, DC, |
| | | **Delivery date:** | Jun 12, 2024 09:42 |

| Shipping Information: | | | |
|---|---|---|---|
| **Tracking number:** | 776809199262 | **Ship Date:** | Jun 11, 2024 |
| | | **Weight:** | 0.5 LB/0.23 KG |

| **Recipient:** | **Shipper:** |
|---|---|
| WASHINGTON, DC, US, | TUCSON, AZ, US, |

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx

June 15, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 776810485430

| Delivery Information: | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Shipping/Receiving |
| **Signed for by:** | R.ON GILL | **Delivery Location:** | |
| **Service type:** | FedEx Priority Overnight | | |
| **Special Handling:** | Deliver Weekday; Direct Signature Required | | WASHINGTON, DC, |
| | | **Delivery date:** | Jun 12, 2024 09:42 |

| Shipping Information: | | | |
|---|---|---|---|
| **Tracking number:** | 776810485430 | **Ship Date:** | Jun 11, 2024 |
| | | **Weight:** | 0.5 LB/0.23 KG |

| **Recipient:** | **Shipper:** |
|---|---|
| WASHINGTON, DC, US, | TUCSON, AZ, US, |

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment. Please check again later for a signature.

Thank you for choosing FedEx

June 15, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 776810173211

### Delivery Information:

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Shipping/Receiving |
| **Signed for by:** | R.ON GILL | **Delivery Location:** | |
| **Service type:** | FedEx Priority Overnight | | |
| **Special Handling:** | Deliver Weekday; Direct Signature Required | | WASHINGTON, DC, |
| | | **Delivery date:** | Jun 12, 2024 09:42 |

### Shipping Information:

| | | | |
|---|---|---|---|
| **Tracking number:** | 776810173211 | **Ship Date:** | Jun 11, 2024 |
| | | **Weight:** | 0.5 LB/0.23 KG |

**Recipient:** 

WASHINGTON, DC, US,

**Shipper:**

TUCSON, AZ, US,

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment. Please check again later for a signature.

Thank you for choosing FedEx