

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

March 11, 2026

**By ECF**

The Honorable Stewart D. Aaron
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *Florence Immigrant and Refugee Rights Project, et al. v. United States Department of Health and Human Services, et al.*, No. 24 Civ. 6740 (SDA)

Dear Judge Aaron:

This Office represents Defendants United States Department of Health and Human Services ("HHS"), United States Customs and Border Protection ("CBP"), United States Immigration and Customs Enforcement ("ICE"), and United States Department of Homeland Security ("DHS," and together with HHS, CBP, and ICE, the "Government") in the above-named Freedom of Information Act ("FOIA") action, in which Plaintiffs seek records concerning the use of dental and bone radiographs for the determination of ages of people in the custody of DHS, CBP, ICE, or HHS's Office of Refugee Resettlement ("ORR"). We write respectfully to respond to Plaintiffs' letter motion for an order requiring HHS/ORR, ICE, and CBP to produce at least 1,000 pages of responsive records or process at least 3,000 pages of records monthly. *See* ECF No. 54.

**HHS**

On January 15, 2025, HHS produced 1,009 pages of responsive policy documents and guidance. On February 5, 2025, HHS produced a spreadsheet reflecting relevant financial expenditures by ORR. On February 12, 2025, HHS produced 248 pages of responsive, non-exempt portions of 345 pages of medical age assessments related to certain individuals who had undergone age redetermination during the relevant period. HHS requested that Plaintiffs review the February 2025 production and determine if there was a possibility of narrowing their request. Plaintiffs instead requested that HHS process the remaining records in accordance with certain priorities with the possibility of assessing and narrowing after receipt of substantial productions.

Per the parties' agreement in June 2025, ECF No. 44, HHS processed 1,009 pages of previously identified medical age assessments and made a production of responsive, non-exempt records from that set on June 30, 2025. HHS processed the remaining 928 pages of previously identified medical age assessments and on July 31, 2025, produced responsive, non-exempt portions thereof. Certain of the records in the June and July 2025 productions were sent to other federal agencies for consultation, and HHS produced those records to Plaintiffs on August 29, 2025. As the parties indicated in their joint status letter filed on September 15, 2025, ECF No. 50, following the August production, the parties were "continu[ing] to confer about any additional,

potentially responsive records that HHS may have." The parties' discussions were interrupted by the Government shutdown during October and early November, during which this case was stayed, and relevant staff were furloughed.

On November 24, 2025, Plaintiffs sent HHS and the other Defendants a letter that contained several proposals for prioritizing certain HHS documents. HHS then evaluated those proposals to determine next steps, which for several reasons took some time. First, during the Government shutdown that spanned from October 1 to November 12, 2025, HHS FOIA personnel were furloughed and routine FOIA activities were suspended, creating a backlog of work. Second, to respond to Plaintiffs' letter, the FOIA Office needed to coordinate with multiple HHS components, including ORR, to obtain the necessary information. Third, Plaintiffs' inquiries were complex and required extensive research, verification, and multiple levels of review to ensure that accurate and complete responses were provided. On February 10, 2026, counsel for the Government met and conferred with counsel for Plaintiffs to convey HHS's position on Plaintiffs' proposals and to attempt to negotiate a schedule for the remaining HHS searches, processing, and production. Three weeks later, Plaintiffs requested that the Court order HHS to produce 1,000 pages or process 3,000 pages monthly.

HHS has proposed processing 500 pages per month, with monthly productions resuming on March 31, 2026. *See* Declaration of William H. Holzerland, dated March 11, 2026 ("Holzerland Decl."), ¶ 14. Even where a FOIA request warrants expedited processing (it is HHS's position that the request here is not entitled to expedited treatment),[1] the statute requires only that the agency process potentially responsive records "as soon as practicable." *See, e.g.*, *Documented NY v. U.S. Dep't of State*, No. 20 Civ. 1946 (AJN), 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021) (citing 5 U.S.C. § 552(a)(6)(E)(iii) and explaining that to determine whether to grant a plaintiff's motion to expedite the processing rate, courts can consider, among other things, "evidence of the agency's resource constraints"). Plaintiffs' proposal of 1,000 produced pages per month or, alternatively, 3,000 processed pages per month, is not practicable because it is flatly incompatible with HHS's currently available resources, for the reasons set forth in the accompanying declaration of William Holzerland, Deputy Agency Chief FOIA Officer in HHS's Office of the Secretary. *See* Holzerland Decl. ¶¶ 6–11. Indeed, the requested processing rate is far outside the mainstream of both court-ordered processing rates and processing rates reached by agreement of the parties. *See Rolling Stone LLC v. Dep't of Justice*, No. 23 Civ. 10741 (LJL), 2024 WL 3862521, at *3 (S.D.N.Y. Aug. 19, 2024) (noting that a processing rate of "approximately 500 pages a month . . . is fairly standard"

---

[1] As relevant here, ECF No. 11-2 (FOIA request to HHS), an agency affords expedited processing where a requester is "a person primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(I), (II). Plaintiffs have not demonstrated that they are primarily engaged in disseminating information and therefore cannot establish that they are entitled to expedited processing. *See, e.g.*, *Landmark Legal Foundation v. EPA*, 910 F. Supp. 2d 270, 276 (D.D.C. 2012) (plaintiff's claim that "among its primary activities is to disseminate to the public about the conduct of governmental agencies" was "not sufficient to show that [plaintiff] is primarily, and not just incidentally, engaged in information dissemination"); *ACLU of N. Cal v. Dep't of Justice*, No. 04-4447, 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) ("while dissemination of information may be *a* main activity of ACLU-NC, there is no showing that it is *the* main activity").

and citing several cases from the Southern District of New York, including *N.Y. Times Co. v. Dep't of Def.*, No. 19 Civ. 9821 (VSB), 2022 WL 1547989, at *2 (S.D.N.Y. Apr. 21, 2022), where the court ordered the defendant agency to process 500 pages every 60 days, and *Haitian Bridge Alliance v. U.S. Dep't of Homeland Sec.*, No. 22 Civ. 8344 (ER), 2024 WL 476304, at *11 (S.D.N.Y. Feb. 7, 2024), where the court found it reasonable for various agency defendants to process between 400 and 750 pages per month).

HHS has experienced resource constraints over the past year but is working diligently to modernize its FOIA operations using new technology, which the agency anticipates will allow it to handle a larger workload more quickly and at lower cost. Holzerland Decl. ¶ 6. At this time, however, the FOIA Office has just five staff members responsible for handling approximately 11,493 pending FOIA requests, 700 pending FOIA appeals, and 327 pending FOIA consultations—in addition to approximately 117 active FOIA litigations. *Id.* ¶¶ 6, 9, 10. To process records at the rate that Plaintiffs suggest would require that HHS devote 30 percent of all of the FOIA Office's processing capacity to a single case. *Id.* ¶ 10.

Moreover, to the extent Plaintiffs take issue with the amount of time it will take HHS to process all responsive records, ECF No. 54 at 2–3, that time could be shortened by Plaintiffs' agreement to narrow their extremely broad FOIA request, ECF No. 11-2, which they have thus far refused to do. The request defines "records" to include nearly every type of document or communication—e-mails, memoranda, case notes, reports, data, training materials, and contracts—without meaningful limitation. It also seeks "all communications" from 2018 to the present relating to age determinations, with such communications limited only by expansive search terms such as "age determination," "radiograph," "dental," "x-ray," "adult," and "transfer." Because of the lengthy timeframe and breadth of the search terms, the request captures an exceptionally large volume of records; indeed, an enterprise-wide search for communications responsive to the request yielded an extraordinary 291 GB of data. Further, the portion of the request seeking records (specifically, age redetermination memoranda and related medical documentation, including radiographic reports and associated age determination records) for all individuals in ORR custody nationwide since January 1, 2018, requires ORR to locate and review potentially responsive records maintained in archived physical case files. Responsive age redetermination memoranda and medical documentation are not maintained in a centralized electronic database, and these records may be stored in physical warehouse facilities. Searching for these records will require ORR to undertake a labor-intensive review of archived case files to identify and process any responsive records.

Finally, to the extent Plaintiffs request an order directing HHS to produce—as opposed to process—1,000 pages per month, that request is both overly burdensome and administratively complex. That is, where a *processing* schedule is ordered, the agency can assign the particular number of potentially responsive pages to be reviewed for both responsiveness and exemptions. If, however, a *production* schedule is ordered, it would be difficult, if not impossible, for the agency to allocate resources because it is not clear how many pages would need to be reviewed before a given number of responsive pages are yielded.

Plaintiffs' proposed rate would cut deeply into HHS's processing resources—resources that have decreased substantially over the past year as HHS's workload has steadily increased, Holzerland Decl. ¶¶ 6, 8—with the result that many other requests would be delayed, including

those submitted before Plaintiffs' request and those from requesters who either choose not to, or lack the resources to, litigate, *id.* ¶ 13. HHS can commit in good faith to achieve 500 pages per month of processing for responsiveness and exemptions.

**ICE and CBP**

Funding for DHS lapsed on February 14, 2026. *See, e.g.*, Dan Merica and Matthew Choi, *The Shutdown That Everyone Has Forgotten*, The Washington Post (Mar. 10, 2026, 6:01 a.m.), https://www.washingtonpost.com/politics/2026/03/10/shutdown-that-everyone-has-forgotten/. Accordingly, ICE and CBP, which are components of DHS, respectfully request that the Court defer decision on Plaintiffs' letter motion as it applies to them until funding is restored, and respectfully propose filing a response to Plaintiffs' letter motion within seven days of the restoration of funding.

We thank the Court for its consideration of this letter.

Respectfully,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:   */s/ Jessica F. Rosenbaum*
ALYSSA B. O'GALLAGHER
JESSICA F. ROSENBAUM
Assistant United States Attorneys
Tel.:   (212) 637-2822/2777
Email: Alyssa.O'Gallagher@usdoj.gov
          Jessica.Rosenbaum@usdoj.gov

4